[Civ. No. 61066. Second Dist., Div. Four. Jan. 5, 1982.]

TERRY LEE ELLENBERGER et al., Plaintiffs and Appellants, v. SCOTT ALLEN KARR et al., Defendants and Appellants.

426

### COUNSEL

Manuel H. Miller and Jeffrey S. Weiss for Plaintiffs and Appellants.

Brown & Vars, Brown, Vars & Malone, J. Patrick Jacobs, Ronald Tracy Malone, Bonelli, Wood & Heib, Bonelli, Heib, Fuchs & O'Neal and John D. Fuchs for Defendants and Appellants.

### OPINION

**KINGSLEY, J.**—Defendants appeal from an adverse judgment in an action for personal injuries; plaintiffs appeal from an order taxing costs. We affirm both the judgment and the order.

### THE APPEAL FROM THE JUDGMENT

Plaintiff Terry Ellenberger was injured in an automobile accident. He sued for damages and his wife Dwana joined seeking damages for loss of consortium. Both defendants stipulated to liability and the case went to the jury solely on the issue of damages. After a long trial, the jury returned a verdict for Terry in the amount of $175,000 and for Dwana in the amount of $25,000, of which $20,000 was stated to be for her loss of consortium.

### I

Defendants contend that the evidence does not support the verdicts. We disagree. There was extensive testimony on both sides both as to the extent of Terry's injuries and (as bearing on the consortium issue) as to the domestic life of Terry and Dwana. The conflict was direct; it was for the jury to resolve it; the trial court denied a new trial motion. We have no right or power to substitute our opinion for that of the triers of fact.

## II

■ Defendants sought to introduce evidence that plaintiffs had filed no income tax returns for the years immediately preceding the accident. The trial court rejected that request, basing its ruling in part on section 352 of the Evidence Code. Defendants rely on *Newson* v. *City of Oakland* (1974) 37 Cal.App.3d 1050 [112 Cal.Rptr. 890]. That case, however, dealt only with whether a litigant had a privilege to withhold similar information. As we have said, the ruling here was not based on that ground. We conclude that the trial court did not err in its ruling. While a jury *might* conclude from the failure to file a tax return that plaintiff had not earned as much prior to the accident as he here testified he had earned; on the other hand, the jury might conclude that he was a tax evader. Not to open up the case to that kind of pure speculation is the very purpose of section 352.

## III

■ As is required by sections 2037 et seq., of the Code of Civil Procedure, the parties had exchanged lists of proposed expert witnesses. When an expert witness for plaintiff had testified, defendants sought to call an expert witness, whose name had not been included in their list, to testify that plaintiffs' expert was entirely wrong. Under section 2037.5, such an unlisted expert may be called only "for purposes of impeachment." The contention here is that the purpose was to *impeach* plaintiffs' expert. The contention is frivolous. Calling an expert witness to express an opinion contrary to that expressed by another expert witness is not the "impeachment" contemplated by section 2037.5.

## IV

■ When the jury returned with its verdicts, it was polled and all jurors answered that it was their verdict. On the motion for a new trial, defendant offered declarations of five jurors claiming that they had so answered because one juror (not the foreman) had told them that, on polling, they must answer "yes" whether they in fact agreed or not. Counterdeclarations show that the discussion in the jury room was only over whether a response more than a simple "yes" was expected; the juror inquired of said that that simple answer was enough. On the showing made, the trial court was entitled to believe that the declarations were merely evidence that the jurors, after having been discharged, had had second thoughts—perhaps after discussions with

counsel after the trial. A juror, once polled and discharged, cannot change his/her mind.

## THE CROSS-APPEAL

■ Prior to trial, plaintiffs had made a settlement offer of $99,000; defendants cross-offered to settle for $35,000. Neither offer was accepted. As we have said above, the verdicts and judgment were for a total of $200,000. Relying on section 998 of the Code of Civil Procedure, plaintiffs sought to recover, as costs, the fees paid by them to the expert witnesses who testified in their behalf. On a motion to tax costs, that claim was rejected. We hold that the order was correct. Section 998 expressly provides, in subdivision (g), that "The costs for services of expert witnesses ... shall not exceed those specified in Section 68092.5 of the Government Code." That section, in subdivision (a), restricts fees allowable to a witness who testifies *solely* as to any expert opinion. It is clear from the record that the witnesses for whom costs are here requested were treating physicians, whose testimony could have been compelled by simple subpoena. Their services are not subject to being charged as costs under section 998. (See *Bureau of Medical Economics v. Cossette* (1974) 44 Cal.App.3d Supp. 1 [118 Cal.Rptr. 242], citing *City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227, 234 [231 P.2d 26, 25 A.L.R.2d 1418].)

The judgment and the order are affirmed. Plaintiffs shall recover their costs on the appeal from the judgment; defendants shall recover their costs on the cross-appeal from the order.

Files, P. J., and Woods, J., concurred.

A petition for a rehearing was denied January 26, 1982.